IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CR-54-FL

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | |
| JOHN PATRICK ARMSTRONG, ) | MEMORANDUM OPINION |
| ) | |
| Defendant. ) | |
| ) | |

This matter came before the court for a five day bench trial in June, followed by additional trial briefing and ancillary motions, then extensive closing arguments July 17, 2009. Thereafter, the court pronounced defendant not guilty on Counts One through Five of the indictment.[1] Findings and conclusions more particularly issued from the bench July 17, 2009, are summarized here for clarity of record.

To meet its burden on Counts One through Three of the indictment, which charged defendant with willfully attempting to evade or defeat tax for the years 2002, 2003, and 2004, the government had to prove beyond a reasonable doubt, among other things, that defendant acted willfully. The government also had to prove this to meet its burden on Counts Four and Five of the indictment, which charged defendant with willfully filing a false tax return for the years 2002 and 2003.

The government failed to prove beyond a reasonable doubt that defendant acted willfully in these matters, that is, that defendant acted voluntarily and deliberately with the intent to violate a known legal duty. In reaching this conclusion, the court considered and weighed carefully the evidence in the record, key aspects of which are noted below.

---

[1] In closing July 17, 2009, the government moved to dismiss Count Six of the indictment, which motion was allowed.

It was undisputed that the design of the trust structure and attendant transactions, including promoted methodologies for getting money out, was complex. Understanding of the program was made more difficult by proof problems of neither side's making. The court recognized that multiple irregularities existed in execution and application of the plan advertised by Concept Asset Protection Systems, LLC ("Concept"), for asset protection and tax deferral benefits.

But there was evidence also of fairly regular action by defendant in adherence thereto. Conduct affirming the plan was undertaken by him even after defendant learned the investment advisor affiliated with Concept was corrupt and under indictment. And from this conduct, including defendant's repayment on a loan, upon sale of residential real property, of more than what then was due in an amount approximating the sum of his equity in the property, the fact finder reasonably inferred lack of willfulness.

Expert testimony was received from both sides as to the tax consequences of the trust structure and transactions utilized by defendant. The experts' conflicting opinions about the proper characterization of the transactions, including whether defendant had a reportable interest in or signature or other authority over a financial account in a foreign country, also militated against a finding beyond a reasonable doubt that defendant acted willfully. These highly skilled and credible professionals came to very different determinations as to the plan documents and consequences of the actions of this defendant.

The government's theory of the case also rested heavily on the testimony of the two tax professionals who assisted defendant in the preparation of his tax returns for the years at issue, both of whom testified to defendant's good character for doing the right and legal thing in tax matters. David Cochran ("Cochran"), the certified public accountant ("CPA") who prepared defendant's tax returns for 2002 and 2003, testified that he referred defendant to Robert Reid ("Reid"), of Concept,

after attending a seminar presented by Reid and others, performing independent investigation, and coming to believe that the promoted plan was a valid method for deferring the payment of capital gains taxes.[2] Defendant's refusal to provide Cochran with copies of the trust document and annuity agreement when requested was of minimal significance, given Cochran's testimony that he was aware that defendant had used the domestic and offshore components of the plan, that he understood it very clearly, and that he understood Reid asserted a proprietary interest in the plan documents. Furthermore, Cochran received copies of the detailed plan descriptions sent to defendant by Reid, which explained, among other things, the ability to borrow money through the international system.

David Gospodarek ("Gospodarek"), the CPA who prepared defendant's tax return for 2004, also reviewed transactions at issue in this case, specifically at defendant's request. At their initial meeting, before preparation of the 2004 return, Gospodarek and Armstrong discussed the domestic trust and offshore transactions defendant had utilized and defendant's objectives going forward.[3] Gospodarek testified that defendant provided him with various documents relating to these transactions, including a schedule of the loans received by defendant, and that defendant consistently asked if Gospodarek needed additional documents or information to complete his review.

Also relevant to the court's determination was evidence that, based on his interactions with defendant from February through December 2005, Gospodarek did not feel defendant understood the transactions in which he had engaged. There is no evidence in the record that Gospodarek considered amendment of defendant's return for 2004, which he had prepared. While not learned

---

[2] The government argued that although the entire transaction, as promoted by Reid, was a sham, the court should nonetheless credit Reid's testimony at trial regarding the effect of defendant's communications to Gene T. Gilman, who acted as investment advisor, regarding draws on the line of credit. The court found Reid's testimony worthy of little weight in this regard.

[3] The government's misapprehension of the chronology of defendant's conversations with and disclosures to Gospodarek was the subject of considerable discussion at closing arguments.

3

in the particulars of the insurance cells, Gospodarek's knowledge then of loans to defendant and of an offshore component to the transactions, and his focus in counseling defendant in December 2005 on ramifications limited to the perceived nature of the trust, is revealing. It appeared from the evidence that neither CPA gave defendant reason to believe that he had improperly declared that he had no interest in or signature or other authority over a financial account in a foreign country for the tax years at issue, militating further against a finding that defendant acted willfully.

Following filing of the 2004 return and Gospodarek's further review, defendant acted on Gospodarek's recommendations in part, seeking an accounting from the trustee and threatening legal action against the trustee. With respect to his earlier returns, it does not appear that Gospodarek counseled defendant to do more than investigate election of an installment sale on his 2002 tax return. That defendant does not appear to have done so after December 15, 2005, does not weigh heavily in favor of a finding of willfulness in light of all the facts and circumstances presented. And while not determinative of his intent, that defendant spoke out formally in 2006 at the federal sentencing of Gilman, ostensibly upon some disclosure to the court of defendant's involvement with Concept, is worthy of note.

Considering these key aspects and all of the evidence adduced at trial, for reasons noted herein and as pronounced more particularly Friday evening, after a full day of closing arguments, where the government did not prove beyond a reasonable doubt that defendant had the requisite intent to commit the crimes charged, defendant must be and is adjudged not guilty of counts One through Five. Judgment shall issue in accordance with the court's determinations.

This the 21st day of July, 2009.

LOUISE W. FLANAGAN
Chief United States District Judge